The **HOME INDEMNITY COMPANY,**
Plaintiff-Appellee,

v.

**TWIN CITY FIRE INSURANCE COMPANY and Parker G.M.C. Truck Sales, Inc., Defendants-Appellants.**

No. 71–1671.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 30, 1972.

Decided March 9, 1973.

Emerson Boyd, E. Davis Coots, Indianapolis, Ind., for defendants-appellants.

Evan Steger, Indianapolis, Ind., for plaintiff-appellee.

Before HASTINGS, Senior Circuit Judge, CAMPBELL, Senior District Judge,* and MORGAN, District Judge.*

HASTINGS, Senior Circuit Judge.

The Home Indemnity Company (Home) brought this diversity declaratory judgment action against Twin City Fire Insurance Company (Twin City), Parker G.M.C. Truck Sales, Inc. (Parker Truck), Oley Thorpe and Mary Cook. It sought thereby to determine whether Home or Twin City insured Rex L. Imlay, the driver of a certain 1966 Mack tractor at the time it was involved in an accident in Indianapolis, Indiana. This question, in turn, is answered by determining who owned the Mack truck at the time of the accident.

Home was the liability insurance carrier for Imlay's employer, Bodge Lines, Inc. (Bodge), which was engaged in the trucking business. Frank A. Price was president of Bodge, and Imlay was employed as a mechanic.

Twin City was the liability insurance carrier for Parker Truck, which was engaged in the business of selling new and used trucks. Parker Truck employed Joseph A. Burke as a salesman and William Amos as a truck driver.

Sometime prior to March 24, 1969, Burke contacted Price for the purpose of selling Bodge a new 1969 G.M.C. Model 30T tractor. These negotiations contemplated that, as part of the pur-

---

* Honorable William J. Campbell, Senior District Judge, Northern District of Illinois, and Honorable Robert D. Morgan, Chief Judge, Southern District of Illinois, are sitting by designation.

chase price, Bodge would trade to Parker Truck a 1966 Mack tractor which it owned, the certificate of title to which was held by a lien holder in Chicago. It was further agreed as a part of the negotiations that Bodge might remove some new tires from the trade-in Mack truck and replace them with used tires. On March 24, 1969, prior to 10:00 A.M., Bodge and Parker Truck, through their representatives, Price and Burke, respectively, came to an oral agreement concerning the purchase price which Bodge was to pay Parker Truck for the new 1969 G.M.C. tractor, and that Parker Truck would pay the lien balance owed on the trade-in vehicle.

At about 10:00 A.M., Burke went to the premises of Bodge, at which time Price, on behalf of Bodge, executed a conditional sales contract for the purchase of the new 1969 tractor; and an invoice for the same was delivered to Bodge. By this time Bodge had the new 1969 tractor in its possession. The exchange of tires on the trade-in vehicle had not yet been accomplished.

At about 1:00 P.M. the same day, Burke and Amos went to the Bodge premises to pick up the trade-in vehicle and transport it to the premises of Parker Truck. Imlay advised them he had not yet completed the exchange of tires. Burke said he would not be able to return that day, and Imlay then volunteered to drive the trade-in vehicle to the premises of Parker Truck after he had completed the exchange of the tires. Burke said that would be all right.

Imlay completed the exchange of tires at the Bodge premises and about 4:30 P.M. was driving the Mack trade-in to the Parker Truck premises. En route he was involved in an accident with defendants Oley Thorpe and Mary Cook. The Mack tractor, damaged in the collision, was later removed to the Parker Truck premises. Parker Truck subsequently had it repaired at its own expense, paid the balance owing to the lien holder, received the certificate of title and resold the repaired Mack tractor. Parker Truck made no claim that the damage to the trade-in vehicle required an adjustment to the contract.

All of the foregoing facts were found by the trial court and are fully supported by the record before us. They are not clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, Title 28, U.S.C.A.

Defendants Oley Thorpe and Mary Cook have filed actions seeking recovery of damages for alleged personal injuries and property damage as the proximate result of the alleged negligent operation of the 1966 Mack tractor by Imlay.

The instant cause was submitted to the trial court upon a joint stipulation, without a hearing, upon the pleadings, the depositions of Imlay, Burke and Price and the respective insurance policies of Home and Twin City. The stipulation further provided:

" * * * the sole issue for determination is whether said plaintiff or said defendant insures one Rex Imley for his liability, if any, arising out of an accident which occurred on March 24, 1968 and out of which said accident claims have been presented by defendants Oley Thorpe ·and Mary Cook.

" * * * there is a single issue of fact which will be determative [sic] of this question, to wit: Was the vehicle driven by said Rex Imley, at the time of the accident in question, 'owned' by Bodge Lines, Inc. (insured by The Home Indemnity Company), or by Parker GMC Truck Sales, Inc. (insured by Twin City Fire Insurance Company) ?"

Defendants Oley Thorpe and Mary Cook disclaimed any interest in the action and declined to participate.

The trial court, upon consideration of the record as stipulated and briefs by the parties in lieu of oral argument, found the facts as above set out favorable to Home. The court further found that the trade-in Mack tractor was owned at the time of the collision by Parker Truck and that ownership was acquired at the time of the execution of the con-

tract the morning of March 24, 1969, as a partial payment by Bodge for the new G.M.C. truck. The court further found that the arrangement between Burke and Imlay for the delivery of the Mack tractor was made at a time when the vehicle was owned by Parker Truck and was not authorized by Bodge. The court finally concluded that Imlay was not insured by Home but rather was insured by Twin City, and it rendered judgment favorable to Home and adverse to Twin City.

Twin City and Parker Truck alone have appealed. We affirm.

The burden of appellants' appeal is their contention that the trial court erred as a matter of law in finding that the title to the trade-in vehicle had passed from Bodge to Parker Truck before the vehicle left the premises of Bodge. They rely upon certain sections of the Uniform Commercial Code as authority for their claim.

Whether this challenged action of the trial court was a conclusion of law, a finding of fact or a mixed question of law and fact is not determinative of this appeal, and we shall not fashion a label for it. The parties stipulated and agreed "that *there is a single issue of fact* which will be determative [*sic*] of this question, to wit: Was the vehicle driven by said Ray Imley, at the time of the accident in question, 'owned' by Bodge Lines, Inc. (insured by The Home Indemnity Company), or by Parker GMC Truck Sales, Inc. (insured by Twin City Fire Insurance Company)?" (Emphasis added.)

■ It is undisputed that the purchase and sale of a motor vehicle is a transaction involving goods governed by Article 2 of the Uniform Commercial Code, Ind.Code § 26–1–2–101, et seq. (1971). We are concerned here with the sale of the new G.M.C. truck by Parker Truck to Bodge and the trade-in of the Mack tractor by Bodge to Parker Truck. Each party to the transaction is the "seller" of the goods it is to deliver. U.C.C. § 2–304(1), Ind.Code §

26–1–2–304(1) (1971), provides: "The price can be made payable in money or otherwise. If it is payable in whole or in part in goods each party is a seller of the goods which he is to transfer." Hence, both parties agree that Bodge is the "seller" of the trade-in vehicle.

Again, the parties agree that the place for delivery of the trade-in vehicle is governed by U.C.C. § 2–308, Ind.Code § 26–1–2–308 (1971), which provides, in relevant part: "Unless otherwise agreed * * * the place for delivery of goods is the seller's place of business or if he has none his residence * * *." Hence, "unless otherwise agreed," the place for delivery of the trade-in vehicle was Bodge's place of business.

■ Concerning the passage of title, U.C.C. § 2–401(2), Ind.Code § 26–1–2–401(2) (1971), provides: "Unless otherwise explicitly agreed title passes to the buyer [Parker Truck] at the time and place [Bodge's place of business] at which the seller [Bodge] completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place * * *."

Relevant to the tender of delivery of the trade-in vehicle, appellants cite U.C.C. § 2–503(1), Ind.Code § 26–1–2–503 (1) (1971), which states, in relevant part: "Tender of delivery requires that the seller put and hold conforming goods at the buyer's disposition and give the buyer any notification reasonably necessary to enable him to take delivery."

Based upon the foregoing sections of the Uniform Commercial Code, appellants advance the following line of reasoning. When Parker Truck sought delivery of the trade-in vehicle at Bodge's place of business, the trade-in unit was not prepared for tender of delivery because the substitution of the used tires for the new tires had not been accomplished. At that time the parties orally agreed through their respective em-

ployees, Burke and Imlay, to change the place of delivery from Bodge's place of business to Parker Truck's. Since Bodge was unwilling to tender the trade-in vehicle at that time the "otherwise" agreement of § 2–308 was made. Finally, appellants argue, since Bodge had not completed the physical delivery of the vehicle at the time of the accident, and since the accident occurred while the tractor was being operated by an employee of Bodge en route to Parker Truck's premises, in performance of the changed agreement as to delivery, title had not passed to the buyer but remained in the seller. Hence, appellants conclude, Home was obligated to defend and pay on behalf of Imlay any liability found against him. We disagree.

The trial court found as a fact that when Burke and Amos called at Bodge's for the trade-in vehicle to take delivery and transport it to the premises of Parker Truck they were told by Imlay that he had not completed the tire exchange; that Burke said he could not return that day; that Imlay then *volunteered* to drive it for them when it was ready; and that Burke said that would be all right. We cannot fault this finding of fact. Imlay was driving as a volunteer to accommodate Burke and Amos, rather than as a Bodge employee under a new agreement as to place of delivery which would have affected ownership of the vehicle. Further, our reading of Price's deposition indicates that he never authorized Imlay or any other employee to make delivery of a truck at any place other than Bodge's premises.

As earlier set out, the trial court found as undisputed facts that, after the accident in question, the damaged trade-in vehicle was removed to the premises of Parker Truck; it was repaired by Parker Truck at its own expense; Parker Truck paid the balance owing on it to the lien holder and later resold the repaired tractor; and no adjustment was made to the contract between the parties because of the damage sustained by that vehicle. Burke's deposition shows that when asked whether any such adjustment had been made, he replied, "No, we had already made the deal."

It seems clear to us, as it was to the trial court, that Parker Truck by its own course of conduct placed its mark of approval on the meaning of the agreement of the parties by completing its performance in a manner consistent with the transfer of ownership to it prior to the accident in question.

We have examined the authorities cited by appellants concerning passage of title and ownership upon or after physical delivery of goods sold. We are not persuaded that they are inconsistent with the result reached here. This case is limited to and controlled by the factual situation present here.

We hold that the factual findings of the trial court are not clearly erroneous and that the conclusions reached below are proper and correct. In short, we have determined that the correct result was reached, and the judgment appealed from is affirmed.

Affirmed.